IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

QIHUI HUANG
:
v. : Civil Action No. DKC 10-0089
:
PHILIP E. CULPEPPER
:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case is a motion to dismiss filed by Defendant Philip E. Culpepper. (ECF No. 7). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion will be granted.

I. **Background**

In 2004, Plaintiff Qihui Huang, a "foreign-born Asian American woman" (ECF No. 1, at ¶ 7), purchased a residential property in Indian Head, Maryland, from Centex Homes ("Centex"). Plaintiff paid a deposit and contracted to close on the property after a Use and Occupancy permit ("U & O permit") was issued by the town of Indian Head ("the Town"). When construction on the property was substantially complete, building inspector Richard Wilcher, an employee of Planchek, Inc., inspected the property and certified to the Town that it was suitable for use and

occupancy. On November 9, 2004, Ryan Hicks, the town manager of Indian Head at that time, issued a U & O permit and, on November 24, Plaintiff closed on the property.

In December 2004, Planchek informed the Town that Centex construction equipment had caused damage to the side yard of Plaintiff's property. Centex attempted to repair the damage, but Plaintiff refused to grant it access to her property. Instead, she complained to the Town that she had been forced to settle with Centex despite the fact that the property had incomplete grading and landscaping. In response, the Town inquired as to whether the U & O permit was issued in error. Mr. Wilcher informed the Town that, at the time of inspection, the condition of the property was sufficient to permit authorization of the U & O permit. Ronald Young, Indian Head town manager at the time of Plaintiff's inquiry, advised Plaintiff that the permit was properly issued.

On December 15, 2004, the Town informed Plaintiff that if she did not permit Centex to enter the property in order to make repairs, she would assume responsibility for repairing the damage herself. The Town reiterated this message in a follow-up letter, dated February 1, 2005. Rather than permitting Centex to repair the damage, Plaintiff elected to file a series of lawsuits. To date, she has commenced at least ten different actions against virtually every party involved in the sale of

the property and the application, approval, and issuance of the U & O permit, including Centex, former Centex field manager Adam Tippett, CTX Mortgage Company, Commonwealth Title, Planchek, Mr. Wilcher, the Town, Mr. Young, Mr. Hicks, and former Indian Head mayor Edward Rice.

The suit against Planchek and its individual employees was filed in the Circuit Court for Charles County. In that case, Plaintiff argued that Mr. Wilcher and Planchek "falsely reported the subject property's conditions," thereby causing the U & O permit to be issued when it should not have been. (ECF No. 1, ¶ 20). The case was tried before a jury on April 16 and 17, 2008 ("the Planchek trial"). The jury returned a verdict in favor of the defendants and Plaintiff's appeal to the Court of Special Appeals of Maryland was subsequently dismissed. At the Planchek trial, Mr. Tippett and Mr. Wilcher were among the witnesses who testified for the defendants. The defendants at that trial were represented by Philip E. Culpepper, the defendant in the instant case.

On January 23, 2009, Plaintiff commenced separate actions in this court against Mr. Tippett and Mr. Wilcher, alleging that they conspired to testify falsely at the Planchek trial and that this conduct was motivated by a discriminatory animus toward foreign-born, Asian-American women. Defendant initially represented Mr. Wilcher in his suit, but subsequently withdrew.

In addition to common law tort claims, the complaints in both cases alleged, *inter alia*, violations of 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, as well as numerous provisions under the Fair Housing Act. Motions to dismiss were granted in both cases, *see Shield Our Constitutional Rights and Justice v. Wilcher*, Civ. No. DKC 09-0151, 2009 WL 3517559 (D.Md. Oct. 26, 2009), *Shield Our Constitutional Rights and Justice v. Tippett*, Civ. No. DKC 09-0152, 2009 WL 2961428 (D.Md. Sept. 11, 2009), and Plaintiffs' motions for reconsideration were denied, *see Wilcher*, 2010 WL 1417991 (D.Md. Apr. 6, 2010), *Tippett*, 2009 WL 3633344 (D.Md. Oct. 28, 2009).[1]

On April 14, 2009, Plaintiff filed a third suit in this court, this time against Mr. Hicks, the former Indian Head town manager, raising similar claims related to his alleged failure to respond to her requests for information about the U & O permit. That case was also dismissed, *see Shield Our Constitutional Rights and Justice v. Hicks*, Civ. No. DKC 09-0940, 2009 WL 3747199 (D.Md. Nov. 4, 2009), and Plaintiff's

---

[1] Shield Our Constitutional Rights and Justice, Inc. ("Shield"), a plaintiff in both of these cases, was initially a plaintiff in this case as well. On April 8, 2010, the court issued an order advising the plaintiffs that their attorney had been placed on "inactive" status with the court's bar; that Shield, a corporation, would need to obtain new counsel; and directing Shield to show cause why its claims should not be dismissed. (ECF No. 8). Plaintiff subsequently informed the court of her desire to proceed *pro se* (ECF No. 10, Ex. 46) and Shield failed to show cause, resulting it its dismissal on April 27 (ECF No. 15).

motion for reconsideration was denied, *see Hicks*, 2010 WL 1489997 (D.Md. Apr. 12, 2010).

On January 13, 2010, Plaintiff commenced the instant action against Mr. Culpepper ("Defendant") related to his alleged misconduct in representing the defendants during the Planchek trial in state court and in the Wilcher matter before this court. Specifically, Plaintiff asserts that Defendant engaged in "fraud upon the court," apparently allegedly by conspiring to present false testimony, and violated the Maryland Rules of Professional Conduct; 42 U.S.C. §§ 1981, 1982, 1985, and 1986; various provisions of the Fair Housing Act, 42 U.S.C. §§ 3601, 3604, 3605, 3617, and 3631; and the Fourteenth Amendment to the United States Constitution. She cites both federal question and diversity of citizenship as the jurisdictional bases of her complaint.[2]

On April 5, 2010, Defendant filed the pending motion to dismiss (ECF No. 7), which Plaintiff has opposed (ECF Nos. 10, 14).

---

[2] Title 28, § 1332, requires complete diversity of citizenship and an amount in controversy of over $75,000. As Plaintiff appears to acknowledge, both parties in this case are citizens of the State of Maryland. (ECF No. 1, at 3). Thus, the diversity requirement is not met and the only possible basis for jurisdiction in this court is federal question jurisdiction. As will be shown, Plaintiff has failed to state any claim involving a federal question, and the court will decline to exercise supplemental jurisdiction over her state law claims, *i.e.*, the first three counts of her complaint. *See* 28 U.S.C. 1367(c)(3).

5

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not, however, accept

unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

**III. Analysis**

The gravamen of Plaintiff's complaint is the allegation that Defendant, who served as defense counsel at the Planchek trial, conspired with certain witnesses to present false testimony and defame Plaintiff in that proceeding, and that this misconduct was motivated by a discriminatory animus toward her as a foreign-born, Asian-American female.[3] According to

---

[3] Plaintiff appears to base her suit on *Amalfitano v. Rosenberg*, 428 F.Supp.2d 196, 198 (S.D.N.Y. 2006), a diversity action in which the defendant was held liable for treble damages, based on his conduct in state court proceedings, under

7

Plaintiff, she would have prevailed at the Planchek trial – and, by extension, in the Wilcher matter before this court – were it not for Defendant's misconduct.  While it is unknown what effect, if any, a victory in state court might have had with respect to Plaintiff's interest in the property, the majority of her federal claims allege discrimination affecting contractual and equal housing rights.

**A. Civil Rights Claims**

Section 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens[.]"  42 U.S.C. § 1981(a).  The statute broadly defines the term "make and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  Thus, a cause of action under § 1981 "must be founded on purposeful, racially discriminatory actions that affect at least one of the

---

a New York statute providing for civil and criminal liability of an attorney who "[i]s guilty of any deceit or collusion . . . with intent to deceive the court or any party[.]"  As noted, the parties in this case are not diverse.  Moreover, unlike the New York statute at issue in *Amalfitano*, the Maryland Lawyers' Rules of Professional Conduct generally do not provide a basis for civil liability, as Plaintiff suggests.  *See Post v. Bregman*, 349 Md. 142, 168 (1998); *Bland v. Hammond*, 177 Md.App. 340, 349 (2007).

contractual aspects listed in § 1981(b)." *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999).

Plaintiff's complaint does not identify any contractual rights that were adversely affected by Defendant's alleged misconduct. The only potential rights that could be implicated arise from her contract with Centex for the sale of the property, but it is unclear how the alleged offending conduct relates to the Centex contract. Even assuming there is a causal nexus, Plaintiff has not set forth any facts which, if proven, would establish that Defendant's alleged misconduct was motivated by discriminatory animus based on her gender, ethnicity, or national origin. Rather, her complaint consists entirely of conclusory allegations that the testimony of Mr. Wilcher and Mr. Tippett was perjured, that Defendant knowingly procured their false testimony, and that he did so with discriminatory intent. In sum, these allegations "are nothing more than the sort of unadorned allegations of wrongdoing to which *Twombly* and *Iqbal* are directed." *Francis*, 588 F.3d at 195-96. Accordingly, Plaintiff's § 1981 claim cannot be sustained.

For similar reasons, she has failed to state a claim under 42 U.S.C. § 1982. Section 1982 provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit,

purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. To state a claim under § 1982, a plaintiff must assert, *inter alia*, that she was "deprived of services while similarly situated persons outside [her] protected class were not deprived of those services, and/or . . . [that she] received services in a markedly hostile manner and in a manner which a reasonable person would find objectively unreasonable." *Givens v. Main Street Bank*, Civ. No. 5:08CV25, 2009 WL 1120599, at *6 (N.D.W.Va. Apr. 24, 2009) (quoting *Dobson v. Central Carolina Bank and Trust Co.*, 240 F.Supp.2d 516 (M.D.N.C. 2003)).

Here, Plaintiff baldly states that Defendant "maliciously deprived" her of the "equal property rights . . . enjoyed by [w]hite citizens" by conspiring to present false testimony at the Planchek trial. (ECF No. 1, at ¶ 39). Nowhere, however, does she identify the property rights of which she was allegedly deprived, nor does she set forth facts giving rise to an inference that any actions taken by Defendant were accompanied by the requisite discriminatory intent.

To state a claim under § 1985(3), a plaintiff must prove

> (1) a conspiracy of two or more persons (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed

>     by the defendants in connection with the
>     conspiracy.

*Simmons v. Poe*, 47 F.3d 1370, 1376-77 (4th Cir. 1995) (citing *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985)). To allege a § 1985 "conspiracy," moreover, a plaintiff must "show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Simmons*, 47 F.3d at 1377 (citing *Caldeira v. County of Kauai*, 866 F.2d 1175, 1181 (9th Cir. 1989)).

Plaintiff's claim under § 1985 fails because her complaint is devoid of any factual allegations regarding the existence of a conspiracy, much less one motivated by specific, class-based, invidiously discriminatory animus. Moreover, her § 1986 claim cannot be sustained because "liability under that section is dependent upon a finding of liability under § 1985." *Holder v. North Carolina Dept. of Corrections*, 804 F.2d 1250, at *1 (4th Cir. Nov. 10, 1986) (Table) (citing *Kaylor v. Fields*, 661 F.2d 1177, 1184 (8th Cir. 1981)).

### B. Fair Housing Act Claims

The Fair Housing Act ("FHA"), also known as Title VIII of the Civil Rights Act of 1968, prohibits public and private parties from engaging in certain discriminatory activities as part of ensuring "fair housing throughout the United States." 42 U.S.C. § 3601. Plaintiff's FHA claims fail because her

complaint contains no allegation that Defendant refused to sell her a property or rejected her for a loan. In fact, Plaintiff has not set forth any facts demonstrating that Defendant was in any way involved with the sales contract for her home. As a result, she has failed to state a claim under the FHA and these claims will be dismissed.

### C. Fourteenth Amendment Claim

Finally, Plaintiff alleges that Defendant's conduct was in violation of her rights under the Equal Protection Clause of the Fourteenth Amendment. "Generally, an individual is denied Equal Protection of the laws when a government actor, to that individual's detriment, draws distinctions on the basis of race." *Thompson v. U.S. Dep't of Housing and Urban Development*, 348 F.Supp.2d 398, 411 (D.Md. 2002) (citing *McLaughlin v. Florida*, 379 U.S. 184, 192 (1964)). Plaintiff's complaint does not allege that Defendant was a government actor during the Planchek trial or the Wilcher case, nor does it appear that he was. Accordingly, Plaintiff's claim in this regard must fail as a matter of law.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be granted. A separate order will follow.

```
_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
```